557 A.2d 5

COMMONWEALTH of Pennsylvania

v.

James RIVERS, Appellant.

Superior Court of Pennsylvania.

Submitted Nov. 21, 1988.

Filed March 31, 1989.

410

Michael J. Healey, Pittsburgh, for appellant.

Dara A. DeCourcy, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before KELLY, POPOVICH and HESTER, JJ.

HESTER, Judge:

This is an appeal from the judgment of sentence of life imprisonment imposed February 11, 1988, following appellant's conviction of first-degree murder for the shooting death of Melvin Hudson. Appellant, James Rivers, obtained new counsel following his trial; consequently, the issues raised on this direct appeal concern trial counsel's ineffectiveness. A hearing on the ineffectiveness claims was held February 11, 1988, just prior to denial of post-trial and supplemental post-trial motions and imposition of sentence. We affirm.

Various people in Stormy's Cafe on the evening of September 26, 1986, witnessed one or more of the following events: appellant arguing with Melvin Hudson; appellant leaving the bar; appellant returning to the bar with a rifle; appellant summoning Hudson to the street; and appellant then shooting Hudson with the rifle.

On the evening of the murder, appellant met his long-time friend Richard Alston at Stormy's Cafe, which is located near appellant's home in Rankin, Pennsylvania. Together they visited appellant's girl friend at her apartment. While there, appellant displayed a .22 caliber rifle, loaded it, and stated that he was angry with Melvin Hudson and that "he could get him anytime he felt like it." Notes of Testimony ("N.T."), 3/16–18/86, at 36. Later, appellant returned to Stormy's and shot Hudson. Appellant was arrested twenty minutes after shooting Hudson. At trial, appellant's defense was that he was provoked and was operating under the influence of alcohol and drugs, in an attempt to reduce the degree of murder.

■ Appellant's first allegation on appeal is that trial counsel was ineffective for "frustrating" his desire to testify at trial.

In reviewing appellant's claims of trial counsel's ineffectiveness, we are guided by a well-established standard, recently repeated by the supreme court in *Commonwealth v. Hentosh*, 520 Pa. 325, 333–334, 554 A.2d 20, 24 (1989):

Approaching our task of determining whether counsel's assistance was effective we initially presume that it was. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Then, in analyzing a defendant's claim, we examine whether the claimant's allegations are possessed of arguable merit. *Pierce, supra; Commonwealth v. Stoyko*, 504 Pa. 455, 475 A.2d 714 (1984); *Maroney, supra*. We next determine whether of the alternatives available to counsel in presenting the defense those chosen were possessed of a reasonable basis in effecting his client's interests. *Id.; Common-*

*wealth v. Wade,* 501 Pa. 331, 461 A.2d 613 (1983). Assuming positive resolution of both inquiries above, we require finally that the claimant demonstrate how the asserted ineffectiveness prejudiced his cause. *Pierce, supra; Commonwealth v. Clemmons,* 505 Pa. 356, 479 A.2d 955 (1984); *Commonwealth v. Vogel,* 501 Pa. 314, 461 A.2d 604 (1983), *cert. denied,* 465 U.S. 1104, 104 S.Ct. 1603, 80 L.Ed.2d 133 (1984).

In conducting this analysis it is important to bear in mind that allegations of the deprivation of the right to effective representation of counsel are not self-sustaining. The burden of proof of the allegations remains with the claimant, their accuracy still to be established by his submission of relevant proofs. *Commonwealth v. McNeil,* 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Miller,* 494 Pa. 229, 431 A.2d 233 (1981); *Commonwealth v. Shore,* 487 Pa. 534, 410 A.2d 740 (1980); *Commonwealth v. Logan,* 468 Pa. 424, 364 A.2d 266 (1976); *Maroney, supra.*

520 Pa. at 333–334, 554 A.2d at 24.

We commented on the issue of trial counsel's ineffectiveness in the context of a defendant's failure to testify:

The decision whether to testify in one's own behalf is ultimately to be made by the accused after full consultation with counsel.... In order to support a claim that counsel was ineffective for not "putting" the appellant on the witness stand, the appellant must demonstrate either that (1) counsel interfered with his client's freedom to testify, or (2) he gave specific advice so unreasonable as to vitiate a knowing and intelligent decision by the client not to testify in his own behalf.

*Commonwealth v. Fowler,* 362 Pa.Super. 81, 87, 523 A.2d 784, 787 (1987) (citations omitted).

The record does not establish appellant's contention that trial counsel prevented him from testifying. Counsel testified that appellant never expressed a desire to testify, but accepted counsel's decision that it was in appellant's best interest not to testify. N.T., 2/11/88, at 54. We find no

basis upon which to disagree with the trial court's determination that counsel was the credible witness in this respect. *See Commonwealth v. Madison*, 501 Pa. 485, 462 A.2d 228 (1983) (appellate courts are to accord great weight to trial court's findings as to a witness's credibility at a post-conviction hearing); *Commonwealth v. Sullivan*, 472 Pa. 129, 371 A.2d 468 (1977) (findings of post-conviction hearing court that are supported by record will not be disturbed on appeal).

Next, the record belies appellant's assertion that the advice not to testify was unreasonable. Appellant presents a two-prong attack on the advice. First, he states that he should have testified about his version of the events. His version is that he did not have a gun, Hudson followed him as he left the bar, Hudson "grabbed" a rifle, and the rifle discharged as the two men scuffled. Since the testimony of numerous, disinterested witnesses contradicts this testimony, counsel was not unreasonable in advising appellant not to testify. Counsel testified that this version of events, coupled with appellant's demeanor, conveyed a lack of remorse that would prejudice appellant's defense. We do not view this conclusion as unreasonable.

Second, appellant suggests that counsel was unreasonable in failing to advise him to testify that he knew of the victim's violent disposition and that he and the victim had argued frequently in the past. Assuming, *arguendo*, counsel should have advised him to testify about these matters, we conclude that this testimony would not have aided in his defense. The testimony, as discussed in more detail later, is only relevant to a self-defense theory, which was fruitless to pursue in light of the clear testimony of numerous witnesses.

Further, the proffered testimony merely establishes further motive for appellant's calculated actions in obtaining a rifle and returning to the bar to shoot the victim. We concur that counsel was not unreasonable in believing that appellant's testimony, which would have advanced his actions as defensible, may have prejudiced the jury by making

him appear remorseless and as not operating in a diminished capacity and in an uncontrollable rage at the time of the murder.

■ We also conclude that counsel's decision not to present Cynthia Carter and Mark Grant as witnesses did not constitute ineffective trial stewardship. In determining whether trial counsel was ineffective in failing to present a particular witness, we are guided by the following standard:

> To obtain relief on this claim, appellant is required to establish that: 1) the witness existed; 2) the witness was available; 3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; 4) the witness was prepared to cooperate and testify for appellant at trial; and 5) the absence of the testimony prejudiced appellant so as to deny him a fair trial.

*Commonwealth v. Petras*, 368 Pa.Super. 372, 377, 534 A.2d 483, 485 (1987). Further, in the absence of proof that the testimony of the witness would have aided in the defense, a defendant has not met his burden of proving that trial counsel was ineffective. *Commonwealth v. Hentosh*, 520 Pa. 325, 554 A.2d 20 (1989).

Here, trial counsel petitioned the trial court for a private investigator to assist in trial preparation by interviewing potential witnesses. That investigation revealed that Cynthia Carter and Mark Grant were present at the location of the murder, but neither had witnessed the shooting. At the ineffectiveness hearing, counsel testified that Cynthia Carter would have testified only that the victim had many enemies. Counsel believed that such testimony would not have been admissible at trial. The interview with Mark Grant revealed that although Grant saw appellant and Hudson drinking together, he did not see the argument, the weapon or the two men leave. Therefore, counsel testified that he did not feel Grant would add anything to the defense. We agree. It is clear that nothing in the proposed testimony of these witnesses would have aided in appellant's defense of provocation. Consequently, appellant has failed to meet his burden of demonstrating how the

òmitted testimony would have positively aided in his defense, and his claim that counsel was ineffective must fail. *Commonwealth v. Hentosh, id.*

Appellant's next assignments of error concern the trial court's rulings on evidentiary matters. Specifically, he asserts that the trial court erred in: (1) limiting evidence about arguments between himself and Hudson to those occurring on the night of the murder; (2) sustaining the Commonwealth's objection to questions about whether Hudson got argumentative when he was drinking; and (3) sustaining the Commonwealth's objection to a question asked of witness Kenny Posten concerning whether Hudson had beaten appellant earlier that evening.

Essentially, appellant argues on appeal that the first two of the trial court's rulings prevented him from demonstrating his knowledge of Hudson's violent propensities, which he claims was relevant to Hudson's character and to appellant's state of mind towards Hudson on the night of the shooting.

It is axiomatic that the admissibility of evidence is a matter left to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused its discretion. *Commonwealth v. Osborn,* 364 Pa.Super. 505, 528 A.2d 623 (1987). In cross-examining, counsel may explore the potential bias or interest of a witness, but the scope of cross-examination lies within the sound discretion of the trial court, and the trial court will not be reversed absent palpable error. *Commonwealth v. Ross,* 345 Pa.Super. 571, 498 A.2d 972 (1985).

The first of the alleged errors involves the following exchange concerning the testimony of Commonwealth witness William Tinsley:

Mr. Foglia [defense counsel]: Were you ever present when Melvin Hudson was drinking?

A   Yeah, we used to drink together.

Q   How many arguments did you get in with him?

Ms. Necessary [Assistant District Attorney]: Objection, Your Honor, irrelevant.

The Court: Sustained.

N.T., 3/16–18/86, at 77–78.

In support of his contention that this restriction of interrogation requires a new trial, appellant relies upon *Commonwealth v. Amos*, 445 Pa. 297, 284 A.2d 748 (1971), where the supreme court held that a homicide victim's prior convictions involving aggression may be introduced to either corroborate a defendant's knowledge of the victim's violent character to demonstrate that the defendant reasonably believed that his life was in danger or to establish the violent propensities of the victim to prove that the victim was the aggressor. Thus, appellant's claim is that, under *Amos*, he was permitted to question Tinsley concerning Hudson's prior violent acts. We disagree.

*Amos* and its progeny stand for the proposition that character evidence of this type is admissible to show that the defendant acted in *self-defense*. *See, e.g., Commonwealth v. Beck*, 485 Pa. 475, 402 A.2d 1371 (1979); *Commonwealth v. Ignatavich*, 333 Pa.Super. 617, 482 A.2d 1044 (1984).

■■■ Here, however, appellant did not and could not attempt to establish a claim of self-defense. Witnesses establish that the two men argued, and appellant left to obtain a rifle and returned to call the victim outside to shoot him. His defense was that he acted in the heat of passion and under serious provocation, in an attempt to reduce the degree of murder. The test for provocation is whether a reasonable man, confronted with the same series of events, would become impassioned to the extent that his mind would be incapable of cool reflection. *Commonwealth v. Voytko*, 349 Pa.Super. 320, 503 A.2d 20 (1986). If sufficient provocation exists, the fact finder must also determine whether the defendant actually acted in the heat of passion when he committed the homicide and thus whether the provocation led directly to the killing or whether there was a sufficient "cooling" period so that a reasonable man would have regained his capacity to reflect. *Commonwealth v. Galloway*, 336 Pa.Super. 225, 485 A.2d 776 (1984).

■ The elements of a provocation defense are different than those of self-defense. The purpose for the introduction of character testimony under *Amos* and its progeny (*i.e.*, to show either that the defendant reasonably believed that his life was endangered or that the victim was the aggressor) are applicable to a claim of self-defense, but irrelevant to a defense of provocation. In a provocation defense, the actions of the victim establishing provocation are relevant. Those are the victim's actions on the night in question because the provocation must lead *directly* to the killing. Accordingly, testimony regarding prior violence between the victim and a witness, in this case William Tinsley, was properly excluded since appellant did not defend on the basis of self-defense. *See Commonwealth v. Harris*, 275 Pa.Super. 361, 418 A.2d 763 (1980) (victim's prior convictions for robbery and aggravated assault were properly excluded from evidence in homicide prosecution, since violent propensities of victim were irrelevant as defendant did not attempt to prove that he acted in self-defense). We find no abuse of discretion in the trial court's ruling.

Similarly, appellant asserts that the trial court erroneously sustained an objection to defense counsel's questioning of Vivian Mitchell, Hudson's girlfriend, about the victim's argumentative propensities when drunk. This testimony was not relevant for the same reason. (We also note that Hudson's argumentativeness on the night in question was presented to the jury.)

In his final contention regarding the evidentiary rulings, appellant suggests that the trial court erred in sustaining a Commonwealth objection to defense questioning of Kenny Posten as to whether Hudson had beaten appellant earlier in the evening. However, according to the sidebar offer, Posten's knowledge of the subject matter was not based on personal observation, but rather on what the victim had told him. Thus, the court found the proffered testimony was inadmissible hearsay. We agree. *Commonwealth v. Cohen*, 371 Pa.Super. 558, 538 A.2d 582 (1988) (testimony by third persons as to extrajudicial utterances made by anoth-

er, when offered to prove truth of matter contained therein, constitutes hearsay evidence and is inadmissible at trial); *accord Hreha v. Benscoter,* 321 Pa.Super. 556, 554 A.2d 525 (1989).

Since the three evidentiary rulings at issue were proper, trial counsel was not ineffective for failing to pursue them. *Commonwealth v. Blagman,* 350 Pa.Super. 367, 504 A.2d 883 (1986) (counsel not ineffective for failing to take baseless action).

■ Finally, Rivers asserts that the evidence was insufficient to convict him of first-degree murder. In support of this argument, he points to the following factors: (1) the victim had argued with both appellant and Ken Posten on the night of the killing; (2) the victim was intoxicated; (3) it is "simply stretching credibility" to believe that the victim would have followed appellant out of the bar and continued the argument if appellant had been carrying a rifle; (4) the testimony of several Commonwealth witnesses that the victim was standing above appellant when he was shot was contradicted by scientific testimony that the bullet followed a downward path. This argument is meritless.

Our standard for reviewing the sufficiency of the evidence is whether:

> Viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all reasonable inferences favorable to the Commonwealth, there is sufficient evidence to find every element of the crime beyond a reasonable doubt. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence. Moreover, in applying the above test, the entire trial record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight to be afforded the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Carbone,* 375 Pa.Super. 261, 264, 544 A.2d 462, 463 (1988).

A review of the facts discussed *supra* establishes that there was sufficient basis for the verdict. Appellant's arguments present the evidence *he* produced in the light most favorable to *him*. That is not the test when the Commonwealth is the verdict winner; thus we reject his challenge to the sufficiency of the evidence.

Judgment of sentence affirmed.