J-S19022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                     :           PENNSYLVANIA
                                     :
             v.                          :
                                     :
                                   :
WILLIE JAMES HAYES              :
                                   :
           Appellant          :     No. 990 WDA 2020

Appeal from the Judgment of Sentence Entered June 19, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007193-2019

BEFORE:   DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                **FILED: JULY 16, 2021**

Willie James Hayes (Appellant) appeals from the judgment of sentence imposed after he pled guilty to aggravated assault and terroristic threats.[1]  We affirm.

The trial court detailed the factual and procedural history as follows:

> On May 25, 2019, a Criminal Complaint was filed against [Appellant] charging him with criminal attempt (homicide) []; aggravated assault []; and ethnic intimidation [].  On January 14, 2020, the Commonwealth withdrew the charge of criminal attempt (homicide) and replaced the charge of ethnic intimidation with one count of terroristic threats []; and [Appellant] entered a guilty plea to one count of aggravated assault and one count of terroristic threats. …
>
> On January 14, 2020, [Appellant] and the Commonwealth stipulated to the facts as set forth in the Affidavit of Probable

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1) and 2706(a)(1).

Cause as being the factual basis for [Appellant's] plea. N.T., 1/14/20, at 6-7. As such, the facts proven by the Commonwealth are as follows:

On 5/25/19 at around 2057 hrs., Officer Jamison, Gonze, Richards and I were dispatched to the Wood Street Subway station for a report of a male that was laying on the Trolley Tracks.

We arrived on the scene and located this male who was later identified as Charles Basarab. Basarab was conscious by [sic] very disoriented upon our arrival. Basarab was also observed to have a laceration on the upper right side of his head and both eyes were found to be swollen and bruised. Basarab was also covered in what appeared to be his own blood. While speaking with Basarab, he could not recall how he ended upon the trolley tracks. Medics and fire were dispatched to the scene to evaluate, treat and extricate Basarab from the location he was at.

While on scene, two witnesses stated that Basarab was assaulted and then thrown onto the trolley tracks by an unknown black male. Note, this male actor was no longer on scene. Both witnesses did however state that prior to the assault, the black male actor made statements that he was going to kill Basarab because he (Basarab) was white. Both witnesses also did state that after Basarab was on the tracks and unconscious, the male actor walked to the edge of the platform and stated, "I fucking told you I was going to kill you."

Through investigation, I obtained CCTV video footage of the incident from the Wood Street Subway Station Cameras. Upon viewing the footage, I observed a black male dressed in a lite/white colored button up shirt, red tie, khaki pants and dark shoes. This described male did appear to strike Basarab with a closed fist on (3) separate occasions before shoving/throwing Basarab onto the tracks. The video does also show that Basarab landed against the trolley tracks with the right side of his head making contact

first. Basarab appeared to be knocked unconscious at this time. The actor then walked to the edge of the platform, looked down at Basarab and then left the Wood Street Station. Note, the CCTV did not indicate or depict anything that Basarab did to provoke the attack on his person.

Also through investigation, it was found that the actor was at the Rivers Casino just prior to the assault on Basarab. I did speak with Rivers Casino PSP Division as well as the Rivers Casino security. Security and PSP officers at the Rivers Casino were able to provide the identity of the actor as [Appellant].

I did contact Basarab after he was transported to the hospital. Basarab received several broken bones including several ribs, arm/wrist and facial bones. Basarab also received surgery due to internal bleeding as a result of the assault. Due to the facial and head injuries, Basarab did also receive multiple stitches. Basarab also informed me that he recalled [Appellant] state that he was assaulting him because he was white.

Affidavit of Probable Cause, at 2. …

[Appellant] requested a pre-sentence report and sentencing was scheduled for April 9, 2020. Due to the COVID-19 judicial emergency, [Appellant's] sentencing was rescheduled first to May 20, 2020 then to August 2020. As [c]ourts opened June 1, 2020, [Appellant's] sentencing was expedited and occurred on June 19, 2020. On that date, with regard to the charge of aggravated assault, [Appellant] was sentenced to serve six to twelve years in a state correctional institution followed by one year of probation. [Appellant's] sentence of six to twelve months for the terroristic threats charge was to run concurrent to [Appellant's] sentence for aggravated assault. [Appellant] was found not to be eligible for RRRI and was given credit for 387 days of time served since May 30, 2019.

[Appellant] filed a Post-Sentence Motion on June 29, 2020, which was denied on August 19, 2020. [Appellant] filed a Notice of Appeal on September 18, 2020. An Order of Court directing [Appellant] to file a Concise Statement of [Errors] Complained of

on Appeal was entered on October 21, 2020. [Appellant] filed his Concise Statement on November 10, 2020[.]

Trial Court Opinion, 12/10/20, at 1-3 (footnote omitted, citations reformatted).

Appellant presents the following question for our review:

> Under the circumstances of this case, is not the sentence imposed of 6 to 12 years of incarceration, followed by one year of probation, manifestly excessive despite it being a standard range sentence, because the mitigating circumstances here render application of the sentencing guidelines clearly unreasonable and the sentence imposed an abuse of the sentencing court's discretion?

Appellant's Brief at 6.

Appellant challenges the discretionary aspects of his sentence. "The right to appellate review of the discretionary aspects of a sentence is not absolute, and must be considered a petition for permission to appeal." *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1265 (Pa. Super. 2014). "An appellant must satisfy a four-part test to invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence." *Id.* We conduct this four-part test to determine whether:

> (1) the appellant preserved the issue either by raising it at the time of sentencing or in a post-sentence motion; (2) the appellant filed a timely notice of appeal; (3) the appellant set forth a concise statement of reasons relied upon for the allowance of appeal pursuant to Pa.R.A.P. 2119(f); and (4) the appellant raises a substantial question for our review.

*Commonwealth v. Baker*, 72 A.3d 652, 662 (Pa. Super. 2013) (citation omitted). "A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the sentencing

code or is contrary to the fundamental norms of the sentencing process."
***Commonwealth v. Dodge***, 77 A.3d 1263, 1268 (Pa. Super. 2013) (citations omitted).

Appellant has complied with the first three prongs of the test by raising his claim in a timely post-sentence motion, filing a timely notice of appeal, and including in his brief a Rule 2119(f) concise statement. ***See*** Appellant's Brief at 12-16. Therefore, we examine whether Appellant presents a substantial question.

Appellant argues that his sentence is "manifestly excessive despite it being a standard range sentence" because the trial court failed to take into consideration "the mitigating circumstances here." Appellant's Brief at 6. Appellant raises a substantial question. ***See Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating "an excessive sentence claim – in conjunction with an assertion that the court failed to consider mitigating factors – raises a substantial question.").

The law is well-settled:

Sentencing is a matter vested in the sound discretion of the sentencing judge. The standard employed when reviewing the discretionary aspects of sentencing is very narrow. We may reverse only if the sentencing court abused its discretion or committed an error of law. A sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision. We must accord the sentencing court's decision great weight because it was in the

best position to review the defendant's character, defiance or indifference, and the overall effect and nature of the crime.

***Commonwealth v. Nevels***, 203 A.3d 229, 247 (Pa. Super. 2019) (citation omitted).

While Appellant concedes his sentence "is technically a standard range sentence," he argues it is unreasonable based on the court's "failure to consider mitigating factors." Appellant's Brief at 28. He states:

> [Appellant] is a veteran who served honorably in Fort Lee, Alabama, and Bosnia. While [Appellant's] status as a Veteran is briefly stated, the sentencing court makes absolutely no mention of [his] current family or living situation, including being a father to both a 26 year old and a newborn child which he presumably is responsible to support. Nor are [Appellant's] rehabilitative needs even mentioned by the trial court. Defense counsel had worked with staffers of Justice Related Services in the Allegheny County Jail to obtain a plan to address his mental health and substance abuse rehabilitative needs, but this treatment plan is not even acknowledged by the sentencing court. *See* NT, Sentencing at 18 (testimony of JRS worker). Admittedly, the court does off-handedly refer to [Appellant's] problems with alcohol and with mental illness, but it is unclear whether the court understood that neither condition has ever been adequately addressed by professionals with treatment. In fact, [Appellant] noted at his sentencing hearing that even he had not previously known about his serious need for mental health treatment. *Id.* at 19. Nothing in [Appellant's] sentence addresses his addiction/mental health needs.

Appellant's Brief at 25-26 (footnote citing the sentencing transcript and Appellant's post-sentence motion omitted). Appellant's argument is not persuasive.

The Sentencing Code provides that on appeal, this Court "shall vacate the sentence and remand the case to the sentencing court with instructions if

it finds: . . . the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable[.]" 42 Pa.C.S.A. § 9781(c)(2). In determining whether a sentence is "clearly unreasonable,"

> the appellate court must consider the defendant's background and characteristics as well as the particular circumstances of the offense involved, the trial court's opportunity to observe the defendant, the presentence investigation report, if any, the Sentencing Guidelines as promulgated by the Sentencing Commission, and the 'findings' upon which the trial court based its sentence.

***Commonwealth v. Coulverson***, 34 A.3d 135, 147 (Pa. Super. 2011) (citation omitted). ***See also*** 42 Pa.C.S.A. § 9781(d).

> In addition,

> the court shall follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. . . . In every case in which the court imposes a sentence for a felony or misdemeanor . . . the court shall make as a part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed.

42 Pa.C.S.A. § 9721(b).

While "the trial court is required to consider the particular circumstances of the offense and the character of the defendant[, and] should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation[, . . . where the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware

of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Fowler*, 893 A.2d 758, 767-68 (Pa. Super. 2006) (citing *Commonwealth v. Boyer*, 856 A.2d 149, 154 (Pa. Super. 2004)).

At sentencing, the trial court stated:

[Appellant's sentence] is in the standard range. **I am taking into consideration [Appellant's] eight years of honorably serving in our Armed Forces, but nevertheless, this was a very violent crime**. Not only was Mr. Basarab down on the train tracks at a subway station and when he landed it looked to me as if his head hit the track and he didn't move once he was down there. Then I was impacted by [Appellant] just walking away and not showing any concern. [Appellant], Mr. Basarab, the victim, could have been very easily killed just from that incident. If a train would have approached him, it probably would have been catastrophic for him. I am also taking into consideration the fact that Mr. Basarab, the victim, does have lifelong injuries based on his testimony. He was seriously impacted not only in a physical sense, but also in a mental sense from what I gathered from his impact statement. I am also basing the sentence on [Appellant] had a previous felony of a stabbing incident. **Perhaps it was mitigated, it was [defense counsel's] claim that it stemmed from a complex of domestic incidents, but nevertheless, there is that conviction. [Appellant] obviously has alcoholic dependency issues and perhaps some mental health issues also**.

N.T., 6/19/20, at 21-22 (emphases added).

The court subsequently opined:

The evidence presented at sentencing and considered by this [c]ourt included the contents of the Pre-Sentence Report, including amendments made thereto at the time of sentencing, the CCTV video referenced in the Affidavit of Probable Cause; the testimony of the victim, Charles Basarab; the very limited testimony of Danielle Meizner of JRS; and the testimony of [Appellant]. As stated on the record at the time of sentencing, this [c]ourt considered [Appellant's] eight years of honorably

- 8 -

serving in our Armed Forces; the lifelong physical and mental injuries that were sustained by Mr. Basarab; [Appellant's] prior personal injury convictions, including an aggravated assault that stemmed from a stabbing; and [Appellant's] alcohol and mental health issues. This [c]ourt found to be particularly egregious the fact that [Appellant] saw Mr. Basarab lying unconscious on the train tracks and walked away without showing any concern or remorse for his actions.

Given that [Appellant] has had two previous instances of criminal conduct that resulted in incarceration in a state correctional institution, this [c]ourt did not believe that [Appellant] was amenable to rehabilitation in a less restrictive setting and found that a sentence of total confinement was necessary. As set forth in the sentencing guidelines submitted in this matter, the standard range for total confinement is 60-72 months. Thus, this [c]ourt's sentence of six to twelve years (i.e.—72 to 144 months) is within the standard range of the guidelines. This [c]ourt considered the mitigating factors presented by [Appellant] to be outweighed by his prior criminal history, including periods of incarceration, and the circumstances of this crime. Thus, this [c]ourt did not find that deviation from the standard range of the guidelines was appropriate.

Trial Court Opinion, 12/10/20, at 4-5 (unnumbered, footnoted omitted).

Pertinently, the trial court "had an opportunity to review the presentence report" before sentencing. *See* N.T., 6/19/20, at 2; *see also* ***Commonwealth v. Corley***, 31 A.3d 293, 298 (Pa. Super. 2011) ("Where the sentencing court imposed a standard-range sentence with the benefit of a pre-sentence report, we will not consider the sentence excessive."). In addition, Appellant concedes his sentence is in the standard range, Appellant's Brief at 28, and "where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code." ***Commonwealth v. Moury***, 992 A.2d 162, 171 (Pa. Super. 2010).

Finally — and contrary to Appellant's argument — the trial court considered mitigating factors. The court specified it "considered [Appellant's] eight years of honorably serving in our Armed Forces . . . and [Appellant's] alcohol and mental health issues." N.T., 6/19/20, at 21-22. Thus, we "shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with **mitigating statutory factors**." ***Commonwealth v. Rosario***, 248 A.3d 599, 614 (Pa. Super. 2021) (citation omitted, emphasis added).

Ultimately, and in its discretion, the trial court imposed a standard range sentence because it "considered the mitigating factors presented by [Appellant] to be outweighed by his prior criminal history, including periods of incarceration, and the circumstances of this crime." Trial Court Opinion, 12/10/20, at 5 (unnumbered); ***see Commonwealth v. Riggs***, 63 A.3d 780, 786 (Pa. Super. 2012) ("The sentencing court is given broad discretion in determining whether a sentence is manifestly excessive because the sentencing judge is in the best position to measure factors such as the nature of the crime, the defendant's character and the defendant's display of remorse, defiance, or indifference.") (citations omitted).

For the above reasons, we discern no sentencing error by the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  07/16/2021